UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TED MICHAEL KOLASA,                      Case No. 13-14311

              Plaintiff,                 Stephen J. Murphy, III
v.                                       United States District Judge

COMMISSIONER OF SOCIAL SECURITY,         Michael Hluchaniuk
                                         United States Magistrate Judge
              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 14)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On October 11, 2013, plaintiff Ted Michael Kolasa filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Stephen J. Murphy, III referred this matter to the

undersigned for the purpose of reviewing the Commissioner's decision denying

plaintiff's claim for disability insurance benefits.  (Dkt. 2).  This matter is before

the Court on cross-motions for summary judgment.  (Dkt. 9, 14).  Plaintiff also

filed a reply brief in support of his motion.  (Dkt. 15).

**B.     Administrative Proceedings**

Plaintiff filed the instant claim for disability and disability insurance benefits (DIB) on January 11, 2011, alleging that he became disabled beginning July 1, 2010.  (Dkt. 6-5, Pg ID 165-66).  The claim was initially disapproved by the Commissioner on April 7, 2011.  (Dkt. 6-3, Pg ID 97).  Plaintiff requested a hearing and on May 8, 2012, plaintiff appeared, unrepresented, before Administrative Law Judge (ALJ) Craig R. Petersen, who considered the case de novo.  (Dkt. 6-2, Pg ID 58-85).  In a decision dated June 12, 2012, the ALJ found that plaintiff was not disabled.  (Dkt. 6-2, Pg ID 34-51).  Plaintiff requested a review of this decision on July 30, 2012.  (Dkt. 6-2, Pg ID 32-33).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on August 15, 2013, denied plaintiff's request for review.  (Dkt. 6-2, Pg ID 24-28); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under sentence four.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff, born in 1963, was 46 years of age on the alleged disability onset date and 47 years old on the date last insured, September 30, 2010. (Dkt. 6-2, Pg ID 49). Plaintiff had past relevant work experience as a carpenter. (Dkt. 6-2, Pg ID 49). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date through his date last insured. (Dkt. 6-2, Pg ID 39). At step two, the ALJ found that plaintiff's degenerative right carpal tunnel syndrome status post-release, right cubital tunnel syndrome, and right palmar nodules were "severe" within the meaning of the second sequential step, that plaintiff's hypertension and his medically determinable mental impairments were not severe, and that his sleep apnea was not a medically determinable impairment. (Dkt. 6-2, Pg ID 39-42). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 6-2, Pg ID 42).

The ALJ determined that plaintiff has the following residual functional

capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b)
> such that he could lift and carry up to twenty pounds
> occasionally and ten pounds frequently.  He could
> occasionally push and pull up to ten pounds.  He could
> stand and/or walk six hours out of an eight-hour workday
> and sit up to six hours in an eight-hour workday with
> normal breaks.  He could occasionally stair and ramp
> climb, but could not climb ladders, ropes or scaffolds.
> He could frequently stoop, kneel, crouch, or crawl.  He
> was unable to perform overhead work and was limited to
> frequent handling, fingering, and feeling with the right
> upper extremity.  He could not perform forceful
> gripping, grasping, or pulling with the right upper
> extremity.  He needed to avoid concentrated exposure to
> cold and vibrations.  He was limited to simple, routine
> and repetitive tasks involving simple, work related
> decisions with few, if any, workplace changes.

(Dkt. 6-2, Pg ID 42-49).  At step four, the ALJ found that plaintiff was unable to

perform his past relevant work, because the exertional demands of that position

exceeded plaintiff's RFC.  (Dkt. 6-2, Pg ID 49).  At step five, the ALJ denied

plaintiff benefits because he could perform a significant number of jobs available

in the national economy.  (Dkt. 6-2, Pg ID 49-50).

### B.    Plaintiff's Claims of Error

Plaintiff contends that the ALJ failed to properly evaluate all the medical

evidence and opinions of record and formed an inaccurate hypothetical that did

not accurately portray plaintiff's impairments and limitations.  Plaintiff asserts that

the ALJ recognized that plaintiff is right-handed, acknowledged that Dr. Dale
Blum, the State agency medical consultant, opined that plaintiff was able to
"**occasionally** handle and finger with the right upper extremity" and accorded Dr.
Blum's opinion "considerable weight, finding it consistent with and well
supported by the weight of the medical evidence of record for the period prior to
the date last insured[.]"  (Tr. 25, emphasis added).  Plaintiff questions why the
ALJ then found in his RFC that plaintiff "was limited to **frequent** handing,
fingering . . . ."  (Tr. 19-20, emphasis added).  According to plaintiff, Social
Security Ruling (SSR) 96-8p provides that the RFC assessment must "always
consider and address medical source opinions" and if the RFC assessment
conflicts with an opinion from a medical source, the adjudicator must explain why
the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 (July 2, 1996).
Plaintiff also argues that in *Wilson v. Commissioner of Social Security*, 378 F.3d
541 (6th Cir. 2004), the court commented that "[a] court cannot excuse the denial
of a mandatory procedural protection simply because, as the Commissioner urges,
there is sufficient evidence in the record for the ALJ to discount the treating
source's opinion and, thus, a different outcome on remand is unlikely."  *Id.* at 546.

Plaintiff argues that the ALJ erred by failing to discuss why he opined that
plaintiff could perform **frequent** handling and fingering when Dr. Blum, whose
opinion was given considerable weight, limited plaintiff to **occasional** handling

and fingering. Plaintiff further argues that all of the jobs identified in response to the flawed hypothetical–sorter of agriculture produce, assembler of small parts and garment sorter–would require an individual to use their dominant, right upper extremity for handling and fingering on more than an occasional basis. Plaintiff thus concludes that the ALJ committed legal error and his decision should be reversed and the case remanded for further proceedings.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ's hypothetical question included all of plaintiff's credible limitations. The Commissioner contends that the ALJ considered plaintiff's testimony, the medical evidence, and other probative evidence regarding his alleged symptoms. (Tr. 19-26). The Commissioner asserts that the ALJ cannot find a claimant disabled based solely on subjective complaints, and the ALJ is not required to credit a claimant's subjective complaints, especially if those complaints are not supported by the objective medical evidence. 20 C.F.R. §§ 404.1528, 404.1529; *see also Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1995) (holding that plaintiff failed to provide objective evidence of her alleged disabling pain and thus affirming the ALJ's decision finding non-disability). In addition, the ALJ is required to include only plaintiff's credible limitations in his hypothetical question. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th

6

Cir. 1993). The Commissioner argues that the ALJ here included all of plaintiff's credible limitations in his hypothetical question.

According to the Commissioner, plaintiff's essential sole argument is that the ALJ should have included the limitations from State agency physician Dale Blum, M.D., limiting plaintiff to occasional handling and fingering, in his hypothetical question. The Commissioner contends, however, that despite plaintiff's argument, the ALJ properly evaluated the opinion of Dr. Blum and gave it considerable weight. (Tr. 32). The Commissioner argues that plaintiff erroneously implies that the ALJ was required to rely on Dr. Blum's opinion to support his residual functional capacity finding. The Commissioner contends, however, that the residual functional capacity assessment is an administrative finding, not a medical opinion. SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). The Commissioner continues that although the ALJ did not adopt Dr. Blum's opinion verbatim, this was proper as the ALJ's residual functional capacity finding does not need to mirror the opinion of a treating, examining, or non-examining physician. Rather, an opinion regarding a claimant's residual functional capacity is not a "medical opinion" because the assessment of a claimant's residual functional capacity is an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e), 404.1546(c); SSR 96-5p, 1996 WL 374183; *see also Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009) (stating that

the responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician).  The Commissioner contends that an ALJ is required to consider all of the relevant evidence in assessing a claimant's residual functional capacity, which is what the ALJ did here.  20 C.F.R. §§ 404.1545, 404.1546.  The Commissioner concludes that, based on the probative evidence of record discussed below and in the ALJ's decision, the ALJ reasonably weighed Dr. Blum's opinion and ultimately found that plaintiff could perform light work that involved frequent handling, fingering, and feeling with his right upper extremity, but no forceful gripping, grasping, or pulling.  (Tr. 19-20).

The Commissioner asserts that medical documentation substantially supports the ALJ's decision here.  Plaintiff complained of pain in his right upper extremity, and in March 2010, an electromyogram/nerve conduction study (EMG/NCS) revealed plaintiff had only mild carpal tunnel syndrome with no axonal loss; only mild right cubital tunnel syndrome with no axonal loss; no evidence of a right cervical radiculopathy or brachial plexus injury; no evidence of a myopathy or peripheral neuropathy; and no evidence of a right radial nerve injury.  (Tr. 293-96).  After surgery in September 2010, plaintiff complained of unchanged pain in his elbow and right and little fingers.  (Tr. 230, 336).  However, he had no redness, swelling, or warmth in his hand, wrist and elbow; and had no tenderness in his hand and wrist.  (Tr. 231, 337).  During his next visit, the last

8

visit before his date last insured, plaintiff had no swelling or redness of his right hand and could make a fist. (Tr. 235, 341). His right wrist and elbow were tender on palpation with pain during range of motion and there was decreased tactile stimulation response to the right ulnar distribution, but plaintiff had no swelling, redness or warmth. (Tr. 235, 341). Plaintiff was instructed to discontinue using his splint, take Tramadol, and perform range of motion exercises. (Tr. 235, 341). The Commissioner contends that courts in this district have upheld decisions in which carpal tunnel claimants had mild-to-moderate electrodiagnostic findings with positive clinical findings and the ALJ limited the claimant to frequent, but not constant, handling and fingering. *See McDonald v. Comm'r of Soc. Sec.*, 2014 WL 1922790 (E.D. Mich. May 14, 2014); *Hairston v. Astrue*, 2013 WL 1874875 (E.D. Mich. Apr. 2, 2013), *adopted by* 2013 WL 1874873 (E.D. Mich. May 3, 2013); *Valdez v. Comm'r of Soc. Sec.*, 2013 WL 3013668 (E.D. Mich. June 18, 2013); *Ervin v. Comm'r of Soc. Sec.,* 2012 WL 4378424 (E.D. Mich. Aug. 30, 2012), *adopted by* 2012 WL 4427897 (E.D. Mich. Sept. 25, 2012).

The Commissioner further argues that plaintiff's daily activities also support the ALJ's decision. Although plaintiff reported difficulty stirring, chopping, lifting heavy pots and pans, holding soap, opening shampoo bottles, reaching while shopping, cutting meat, grasping silverware, holding glasses, tying his shoes and dressing, he was able to help care for his parents, cook simple meals, pick up

9

around his house, feed his dog, rinse dishes, talk on the telephone, shop, drive, and use a riding lawn mower.  (Tr. 48-49, 171-79).  According to the Commissioner, these activities undermine plaintiff's claims that he was totally disabled.

The Commissioner contends that plaintiff's credibility deteriorated further due to the inconsistent statements he made at the hearing.  Despite applying for DIB due to an alleged disability hindering him from working, plaintiff testified that he searched for and applied to many jobs since his alleged onset date in July 2010, including a greeter job at Walmart, but nothing was available.  (Tr. 24, 50).  *See* 20 C.F.R. § 404.1566(c) (stating that an individual will not be found disabled if his residual functional capacity and vocational abilities make it possible for him to do work that exists in the national economy, but he remains unemployed because of, among other reasons, his inability to get work, the lack of work in the local area, or the hiring practices of employers).  Plaintiff testified that he could perform the greeter job, but was limited to 10 hours of work per week due to his disability application.  (Tr. 24, 51).  He also testified that he could perform an inspector job.  (Tr. 24, 51).  Thus, the Commissioner concludes, while plaintiff alleged to the Social Security Administration that he was unable to work, he believed he could work and told prospective employers that he could work.  (Tr. 24, 50-51).

The Commissioner further argues that, contrary to plaintiff's arguments, the

10

ALJ did not have to adopt Dr. Blum's opinion that he was limited to occasional

handling and fingering with his upper right extremity.  As mentioned above, the

ALJ does not need a medical opinion to support his residual functional capacity

determination and does not have to adopt any medical opinion verbatim, especially

when there is contrary evidence.  SSR 96-6p provides that:

> [T]he opinions of State agency medical and
> psychological consultants and other program physicians
> and psychologists can be given weight only insofar as
> they are supported by evidence in the case record,
> considering such factors as the supportability of the
> opinion in the evidence including any evidence received
> at the administrative law judge and Appeals Council
> levels that was not before the State agency, the
> consistency of the opinion with the record as a whole,
> including other medical opinions, and any explanation
> for the opinion provided by the State agency medical or
> psychological consultant or other program physician or
> psychologist. The adjudicator must also consider all
> other factors that could have a bearing on the weight to
> which an opinion is entitled, including any specialization
> of the State agency medical or psychological consultant.

1996 WL 374180, *2.  The Commissioner contends that the ALJ considered the

evidence of record and accounted for plaintiff's right upper extremity limitations

by finding that he could perform frequent, but not constant, handling, fingering,

and feeling with no forceful gripping, grasping, or pulling.  (Tr. 19-20).  The

Commissioner additionally contends that Dr. Blum did not have the benefit of

reviewing all of the evidence, which the ALJ did and based his decision on the

11

entire record, including the hearing testimony during which plaintiff testified that he could work. The Commissioner therefore concludes that substantial evidence supports the ALJ's residual functional capacity finding and hypothetical question. And, given that the vocational expert testified that plaintiff could perform other work that existed in significant numbers in the national economy despite his credible limitations, the ALJ reasonably concluded that plaintiff was not disabled within the meaning of the Act. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777 (6th Cir. 1987) (providing that an ALJ may rely on vocational expert's testimony in response to hypothetical question if the question accurately portrays a claimant's individual physical and mental impairments) (citations omitted).

The Commissioner further argues that even if plaintiff was limited to occasional fingering and handling, the vocational expert identified at least one job that accommodated such restrictions that plaintiff could perform. (Tr. 58). Indeed, the Commissioner continues, the gate guard position consists of occasional handling and reaching with no fingering. At step five of the sequential evaluation process, the ALJ need only establish that a claimant can perform "other work." 20 C.F.R. § 404.1520(f). This burden is met if the ALJ establishes that there is at least one job existing in significant numbers in the national economy that the claimant can perform. 20 C.F.R. § 404.1566(b). According to the Commissioner, the vocational expert here identified three light jobs: hardware

12

assembler, delivery clerk, and gate guard. (Tr. 58). Plaintiff asserts that he would not be able to perform the jobs that required more than occasional handling and fingering. The Commissioner argues that to the extent plaintiff could not perform the hardware assembler and delivery clerk jobs, the Commissioner still met her burden because plaintiff could perform the occupation of gate guard. The Commissioner concludes this Court therefore should reject plaintiff's argument.

### D.    Plaintiff's Reply Brief

Plaintiff contends that the RFC the ALJ ultimately relied on is a combination of two hypothetical questions given to the vocational expert at the hearing. (Tr. 19-20, 58-59). And, plaintiff continues, all of the jobs identified in response to the combination hypothetical–sorter of agriculture produce, assembler of small parts, and garment sorter–would require an individual to use their dominant, right upper extremity for handling and fingering on more than an occasional basis. (Tr. 27, 59). Plaintiff further agrees with the Commissioner that the ALJ does not have to adopt a doctor's opinions regarding limitations, if one is given. However, plaintiff contends that an ALJ cannot summarily reject medical evidence without explanation and substitute his own judgment for that of a treating or even a consulting physician. Plaintiff argues, again, that SSR 96-8p provides that the ALJ must explain how any material inconsistencies or ambiguities in the record evidence were considered and resolved. The plaintiff

contends that the ALJ's RFC assessment here conflicted with the opinion of Dr. Blum but the ALJ did not explain why he chose to limit plaintiff to "frequent" handling and fingering instead of "occasional."  Plaintiff therefore asserts that ALJ's decision should be reversed and the case remanded for further proceedings.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

14

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

Rul. 96-7p, 1996 WL 374186, *4.

15

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc.*

16

*Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

17

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his

> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

Plaintiff argues that the ALJ erred in failing to include restrictions limiting plaintiff to occasional handling and fingering with his right upper extremity, contending that the ALJ failed to include any such limitation despite the fact that the State agency consulting physician, Dr. Blum, determined that it was appropriate.  The Commissioner argues that the ALJ was not required to adopt Dr. Blum's opinion that plaintiff was limited to occasional handling and fingering, and that the ALJ properly evaluated Dr. Blum's opinion and gave it considerable weight.

In his RFC assessment, Dr. Blum opined, in relevant part, that "[h]andling and fingering with [plaintiff's] [right upper extremity] should be limited to occasional due to aggravation of hand and forearm pain."  (Tr. 69).  The ALJ, however, limited plaintiff to frequent handling and fingering.  (Tr. 19-20).  In his report, the ALJ addressed Dr. Blum's opinion evidence, according it

> *considerable weight*, as it is *consistent with and well supported by* the weight of the medical evidence of record for the period prior to the date last insured, including objective physical examination findings and diagnostic imaging studies, as previously described. Additionally, Dr. Blum has acquired experience in evaluating impairments under the Social Security Act

20

and Regulations.

(Tr. 25, emphasis added).  Plaintiff argues that the ALJ erred in failing to adopt, or to explain why he did not adopt, the handling and fingering limitations assigned by the State agency consulting physician.  The ALJ's RFC permits frequent handling and fingering, and thus is less restrictive than the RFC determined by Dr. Blum.[2]

It is well established that an ALJ is not required to discuss each and every piece of evidence in the record for his decision to stand.  *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 Fed. Appx. 661, 665 (6th Cir. 2004).  However, where the opinion of a medical source contradicts his RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC.  *See, e.g., Fleischer v. Astrue*, 774 F. Supp.2d 875, 881 (N.D. Ohio 2011) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").  SSR 96-8p expressly provides that "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not

---

[2] "Frequently" is defined as "activity or condition [that] exists from 1/3 to 2/3 of the time," and "occasionally" as "activity or condition [that] exists up to 1/3 of the time."  *See Owens v. Colvin*, 727 F.3d 850, 851-52 (8th Cir. 2012) (citing the Dictionary of Occupational Titles).

adopted."  SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  Further, pursuant
to the regulations, while ALJs "are not bound by any findings made by State
agency medical or psychological consultants," such consultants are considered
"highly qualified physicians and psychologists who are also experts in Social
Security disability evaluation.  Therefore, [ALJs] must consider findings of State
agency medical and psychological consultants or other program physicians or
psychologists as opinion evidence."  20 C.F.R. § 404.1527(f)(2)(I).

      Here, the ALJ did discuss Dr. Blum's opinion, and did state that he gave the
opinion considerable weight, but he did not discuss why he omitted the occasional
handling and fingering limitation and instead adopted the less restrictive frequent
limitation, as required by SSR 96-8p.  Although the ALJ was not bound by the
opinions of the State agency medical consultant, the ALJ "may not ignore th[at]
opinion[] and must explain the weight given to the opinion[] in [his] decision[]."
SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).  The Commissioner urges that
substantial evidence supports the ALJ's determination of plaintiff's RFC,
including the limitation to frequent as opposed to occasional handling and
fingering.  However, the issue is not whether substantial evidence in the record
supports the ALJ's decision, but whether the ALJ applied the appropriate legal
standards and complied with the Commissioner's own rulings and regulations.
The requirements of SSR 96-8p are clear: where an ALJ's RFC conflicts with a

medical source opinion in the record, the ALJ must explain why that opinion was not adopted.  Whether there is evidence in the record to support the ALJ's less restrictive RFC is not relevant because the ALJ did not discuss his decision not to adopt the more restrictive limitation suggested by Dr. Blum, and relying on other information in the record to explain that omission would require this Court to engage in the *post hoc* rationalization that case law clearly prohibits.  *See Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792 (6th Cir. Sept. 16, 1993) ("[A] simple but fundamental rule of administrative law ... is ... that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action.") (internal citations omitted).

Accordingly, because the ALJ disregarded the applicable regulations in considering the State agency consultant's opinion, plaintiff is entitled to remand on this point.  *See Hovater v. Colvin*, 2013 WL 4523502, at *10-11 (N.D. Ohio Aug. 26, 2013) (remanding case where ALJ did not discuss why he omitted the overhead reaching limitation assigned to plaintiff by the State agency consultants); *see also Kerwin v. Astrue*, 244 Fed. Appx. 880, 884-85 (10th Cir. 2007) (ALJ's unexplained failure to include handling, fingering, and walking limitations found in consulting examiner's opinion required reversal); *Fannin v. Astrue*, 2012 WL

639286, at *3-4 (N.D. Tex. Feb. 28, 2012) (remanding case where ALJ did not explain why he concluded that plaintiff had the ability to "frequently, but not constantly, reach, handle, and finger," but consultant determined that plaintiff was limited to "only occasional" handling and fingering "due to ulnar radial injury"); *Benigar v. Astrue*, 2010 WL 4809318 (N.D. Okla. Nov. 19, 2010) ("When the ALJ's RFC determination differed from the opinion of the nonexamining consultant in ways that were adverse to Benigar, the ALJ needed, at a minimum, to explain the reason he varied from that opinion."); *Gardner v. Astrue*, 2009 WL 7765819, at *8 (S.D. Tex. Mar. 26, 2009) (remanding case where ALJ failed to address state agency consultant's opinions insofar as those opinions differed from his own RFC assessment).

The undersigned acknowledges that remand is not required where, despite the ALJ's error, the ALJ would have reached the same result notwithstanding his error. However, the ALJ's error was not harmless in this case. The ALJ concluded that plaintiff could work as a sorter of agricultural produce, an assembler of small products, and a garment sorter. (Tr. 27). However, plaintiff would be precluded from performing any of these jobs pursuant to the limitations set forth by Dr. Blum, as they all require more than occasional handling and fingering. *See Dictionary of Occupational Titles*, §§ 529.687-186 (requiring constant handling and no fingering), 739.687-030 (requiring constant handling

24

and fingering), 222.687-014 (requiring frequent handling and occasional fingering).  The Commissioner argues that any error is harmless because the vocational expert identified one job–gate keeper–that does not require frequent handling or fingering, and thus identified at least one job that accommodated the restrictions set forth by Dr. Blum.  However, as plaintiff properly points out in his reply brief, the vocational expert identified the gate keeper job in response to the ALJ's first hypothetical question, which did not include the additional limitations ultimately adopted in the RFC assessment of "limit[ations] to simple, routine and repetitive tasks involving simple, work related decisions with few, if any, workplace changes."  (Tr. 58-59).  Accordingly, the vocational expert testimony identifying the gate keeper position does not satisfy the Commissioner's burden of establishing that work exists in significant numbers in the national economy that plaintiff can perform.  Therefore, for the reasons set forth above, this matter should be remanded.  On remand, the ALJ should either adopt the occasional handling and fingering limitations assigned by the State agency consultant, or explain his decision not to adopt those limitations; and if he does adopt the limitation, the ALJ should conduct an additional hearing to determine whether an individual with that limitation would be precluded from working in jobs available in the national economy.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under sentence four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 3, 2015                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

    I certify that on February 3, 2015, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov

27